IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Dr. AHMAD ALJINDI, )
)
Plaintiff, ) Case No.: **24-242 C**
)
v. )
) Related Case No.: 1:21-cv-01295-SSS
THE UNITED STATES, ) Related Case No.: 1:21-cv-01578-DAT
)
)
Defendant. ) Chief Judge Elaine D. Kaplan

**COMPLAINT**

I, the above-named Plaintiff, submitting this Complaint to the United States Court of Federal Claims.

**JURISDICTION**

Venue is proper as the United States Court of Federal Claims has jurisdiction. See 28 U.S. Code § 1491 (a) (1) (2) - (b) (1) (2) (3) (4) (5).

**28 U.S. Code § 1491(b):**

(2) To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

(3) In exercising jurisdiction under this subsection, the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action.

(4) In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.

Received – USCFC
FEB 1 4 2024

## PARTIES

Plaintiff, Dr. AHMAD J. ALJINDI, the Chief AI Scientist, Chief Executive Officer, Founder, and the only Owner of AI Net Group LLC. Mailing Address PO Box 60753 Irvine, CA 92602, 951-742-9773.

Defendant, the United States of America.

## RELATED CASES

1:21-cv-01295-SSS

1:21-cv-01578-DAT

## STATEMENT OF THE CLAIMS

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## FIFTH AMENDMENT TAKINGS CLAIM

## [INFORMATION SECURITY, ARTIFICIAL INTELLIGENCE (AI), AND LEGACY INFORMATION SYSTEMS (LIS)]

The Fifth Amendment Takings claim topic in this lawsuit case is **[Information Security, Artificial Intelligence (AI), and Legacy Information Systems (LIS)]**. This is a **ONE** combined copyrighted scientific filed that discovered and studied the relationships of these three scientific fields altogether and to each other which the fifth amendment takings claim is about and **NOT three** separate broad scientific areas and topics. **[Information Security]**, **[Artificial Intelligence (AI)]**, and **[Legacy Information Systems (LIS)]**.

Plaintiff is submitting in this Complaint the sufficient facts and evidence that formally proves the Fifth Amendment Takings claim in addition to large Exhibits that both contains and supports the evidence:

**What the property consisted of:**

The scientific intellectual property is the discovery of the entire [Information Security, AI, and LIS] scientific field in its entirety and establishing this new scientific field from scratch as it was undiscovered and unknown prior to Plaintiff's formally documented presentation in 2015. Plaintiff is the first AI Scientist in the world who discovered, realized, and studied the relationships between [Information Security, AI, and LIS]. Prior to Plaintiff's scientific research in 2015 this field did not exist. This fact is evidenced with an official copyright certificate from the Library of Congress (See attached copy in Exhibit C). **Library of Congress Certificate of Registration Number:** TX 8-152-561. **Effective Date of Registration:** December 30, 2015.

Furthermore, in addition to the official copyright certificate this property is also formally registered in the **Digital Millennium Copyright Act (DMCA)** Designated Agent Directory on **Coyrights.gov. Registration Number DMCA-1042835**.

From the Abstract page of the Plaintiff's Fifth Amendment Takings property. See attached copy of entire Intellectual Property in Exhibit E:

Information security plays a significant role in the success of organizations (organizations: all types and sizes). Information security will improve when organizations understand the direct and indirect relationships between information security, AI, and LIS efficiency levels and work based on this understanding. Applying AI solutions (solutions: all types of systems, applications, technologies, programs, techniques, and/or ideas) at organizations offers the automated ability to store, analyze, and restore data and information to use it to solve LIS problems. The problem that has been addressed was the information security damages (damages: all types of damages, problems, and/or loss) that

3

occur due to the absence of the AI solutions at organizations, the harmful outcomes on the LIS information security levels, and whether the AI is the stable solution for the information security and LIS problems or not. The direct, simple, and clear meaning of the findings of the study can be summarized in one sentence. The AI is the stable solution for the information security and LIS problems. AI provides organizations with several important advantages such as saving time, money, energy, and preventing and avoiding errors. AI can evaluate, upgrade, reengineer, or replace LIS automatically without human interference, besides the employees that maintain AI systems. Most important, it is highly recommended that organizations should be made aware of the long list of benefits of applying AI solutions to their LIS. Lastly, applying AI solutions to LIS should reduce technical difficulties, and lower the risks of human errors as AI solutions can self-diagnose and repair.

The world was unaware about the use of AI practical solutions based on the formally documented findings of Plaintiff's scientific study and the relationships between [AI, Information Security and LIS] in industries to resolve existing issues and to improve productivities among long list of benefits listed in the attached Exhibits formal documents below. Plaintiff was formally and scientifically able to prove based on generic qualitative study that AI is the stable solution for all Information Security and LIS issues. Plaintiff have formally and scientifically opened the door-wide to the entire world to go through this path as it is the future and the actual start point for what they started to be known later as the *"race toward AI."* In fact, any *"so-called"* AI practical solution that does not take Plaintiff's scientific study findings about the relationships between [Information Security, AI and LIS] is simply NOT an AI solution. Simply AI solutions

4

cannot risk Information Security levels of the Information Systems and operate based on outdated LISs. AI solutions must secure zero percent Information Security risks permanently and indefinitely. Formally and scientifically AI solutions cannot risk or harm Information Security levels of LISs. Accordingly, everything built on top of Plaintiff's taken property is Plaintiff's property.

**How it was taken:**

The property was taken from the following officially copyrighted and registered Publication:

- **Dissertation Topic/Area of Research:** Information Security, AI, and LIS.
- **Dissertation/Publication Information:** Published by ProQuest LLC (2015). Copyright of the Dissertation is held by the Author. ProQuest 3740130.
- **Library of Congress Certificate of Registration Number:** TX 8-152-561.
- **Effective Date of Registration:** December 30, 2015.

**What the government did with it:**

The Government used my property in ALL formal AI Strategies published by the Federal Government (FG) on AI.gov and the by the Department of Defense (DoD) since 2018. See the Preface of the DoD's 2018 AI Strategy. This scientific property is the cornerstone for ALL AI Strategies published on AI.gov.

https://www.AI.gov/publications, See Exhibits (F - J) below.

See the Preface of the DoD's 2018 AI Strategy and see the Abstract page only of Plaintiff's copyrighted Ph.D.'s Dissertation. See Exhibit E. Everything is based on Plaintiff's scientific research and Plaintiff's owned property. The more we read through the official documents and the more we go deeper, the more we discover that everything is built on

Plaintiff's scientific property. Starting from the first line till the end of the last page of the official documents. The DoD knew about the relationship between AI, Information Security, and LIS reading and taking Plaintiff's scientific property and built on its formal scientific findings. The 2018 AI Strategy directed the DoD to accelerate the adoption of AI practical solutions because of the long list of benefits the Plaintiff have presented in his scientific study such as saving time, money, energy, effort, and even avoiding human beings' errors.

The FG used Plaintiff's property in ALL formal AI Strategies published by the DoD, since 2018, as Plaintiff have discovered this entire scientific field in its entirety, as all facts, findings, knowledge that falls under it and based on Plaintiff's scientific generic qualitative study and its formal findings are subsequent knowledge, as formally proven in the mentioned in formal Copyrights information above.

The following is from the FG's AI Official publication library (AI.gov) with the first publication documented in 2016 (after my scientific discoveries has been published to the public as formally documented in the Library of Congress Official Certificate in 2015 (see attached copy in Exhibit C below) as prior to my scientific discoveries and research findings this knowledge and this property was undiscovered and did not exist to the entire world):

https://www.ai.gov/publications

The scientific findings and property takings cannot be counted due to its huge number and due to the fact that my property is the cornerstone for ALL AI Strategies and official documents published by the FG on AI.gov including the DoD.

Some examples about the Fifth Amendment property takings are the following but not limited to:

1. **Defendant's 1st** Fifth Amendment Takings Evidence

National Science and Technology Council (NSTC): **Defendant's 1st Fifth Amendment Takings Evidence**

Networking and Information Technology Research and Development Subcommittee

THE NATIONAL ARTIFICIAL INTELLIGENCE RESEARCH AND DEVELOPMENT STRATEGIC PLAN

October 2016

Page 29:

*"Securing against attacks AI embedded in critical systems must be robust in order to handle accidents, but should also be secure to a wide range of intentional cyber attacks. Security engineering involves understanding the vulnerabilities of a system and the actions of actors who may be interested in attacking it."* **See Exhibit F below.**

2. **Defendant's 2nd** Fifth Amendment Taking Evidence

   Office of Director of National Intelligence (ODNI)

   THE AIM INITIATIVE

   A STRATEGY FOR AUGMENTING

   INTELLIGENCE USING MACHINES

   01/01/2019

   Page 11:

   *"AI technologies have clearly demonstrated that they can provide powerful capabilities. They have also demonstrated their brittleness and vulnerabilities. There are some principles and best practices that can be used today."* **See Exhibit G below.**

3. **Defendant's 3rd** Fifth Amendment Taking Evidence

SUMMARY OF THE 2018 DEPARTMENT OF DEFENSE ARTIFICIAL

INTELLIGENCE STRATEGY

Harnessing AI to Advance Our Security and Prosperity

02/01/2019

Page 5:

*"The costs of not implementing this strategy are clear. **Failure to adopt AI** will result in **legacy systems** irrelevant to the defense of our people, eroding cohesion among allies and partners, reduced access to markets that will contribute to a decline in our prosperity and standard of living, and growing challenges to societies that have been built upon individual freedoms."* **See Exhibit H below.**

4. **Defendant's 4th** Fifth Amendment Taking Evidence

   Page 5 & 6:

   *"This document lays the technical foundation to maximize the value of the Department's data assets as well as its enterprise **data management capabilities** in order to exploit **emerging technologies** and innovations such as **artificial intelligence**, **machine learning**, and **advanced analytics.**"* and;

   *"to promote effective and efficient use of data, align architectures with **emerging technologies**, and advance the **privacy** (including personally identifiable information), **security**, **confidentiality**, and stewardship interests of data throughout the Department."*
   **See Exhibit I below.**

5. **Defendant's 5th** Fifth Amendment Taking Evidence

   National Institute of Standards and Technology (NIST): The U.S. LEADERSHIP IN AI:

   A Plan for Federal Engagement in Developing Technical Standards and Related Tools

8

Prepared in response to Executive Order 13859

Submitted on 08/10/2019

Page 9:

*"The development of standards for IT is integral to **AI technologies and systems**. IT encompasses all technologies for the **capture, storage, retrieval, processing, display, representation, security, privacy and interchange of data and information.***" See **Exhibit J below.**

The Plaintiff was the first AI scientist and researcher in the entire field that discovered, studied, and researched the relations between [Information Security, AI and LIS] as formally and scientifically proven and documented in his Ph.D.'s formal documents. This is my formally registered scientific discovery. I have discovered this entire field in its entirety. See Plaintiff's Additional Official Evidence Confirming the Ownership and Discovery of the Intellectual Property the Information Security, AI, and LIS in attached Exhibit D below that contains a "To Whom It May Concern Letter/Letter of Recommendation" **dated 12/24/2015**, confirming that the undersigned is the first scientist in the world who discovered this filed as it was a new topic that time.

Quote: *"Dr. Aljindi's doctoral research, which **explored the use of artificial intelligence solutions to prevent information security failures, shed new light on an important and timely topic. His research results stressed the benefits of applying AI solutions to legacy and new information security systems** and were based on high-quality qualitative research methodologies and standards."*

Therefore, this Court must legally consider and GRANT the Constitutional Relief for the Fifth Amendment Claim as it was formally and scientifically proven. According to the Fifth

9

Amendment Takings Clause, the FG cannot take the Plaintiff's intellectual scientific property for public use without just monetary compensation. The FG must pay for the formally proven Fifth Amendment Takings Claim. This Court must GRANT the Constitutional Relief immediately based on the United States Constitution and evidence.

**According to the United States Constitution:**

The Fifth Amendment of the United States Constitution includes a provision known as the Takings Clause, which states that "private property [shall not] be taken for public use, without **just compensation**."

Quoted from: http://www.progressivereform.org/

Copyright law in the U.S. is governed by federal statute, namely the Copyright Act of 1976. The Copyright Act prevents the unauthorized copying of a work of authorship. Copyrights can be registered in the Copyright Office in the Library of Congress, but newly created works do not need to be registered. In fact, it is no longer necessary to even place a copyright notice on a work for it to be protected by copyright law.

Quoted from: https://www.bitlaw.com/copyright/index.html

See Copyrights Act Referenced in Exhibit A in the attached Exhibits to Complaint and the Act Published to Public on: https://www.copyright.gov/title17/title17.pdf

According to the Intellectual Property Suits in the United States Court of Federal Claims | US Court of Federal Claims (uscourts.gov):

**Copyright: Section 1498(b)**

Section 1498(b) governs the government's use of copyrighted works:

Hereafter, whenever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, by a corporation owned or

controlled by the United States, or by a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government, the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of [the Copyright Act].73

Published to Public on: https://www.uscfc.uscourts.gov/node/2927

The "Takings Clause" of the Fifth Amendment prohibits Congress (and the States through the Fourteenth Amendment) *Chicago B & QR v Chicago*, 166 US 226 (1897) from taking private property for public use, without just compensation. According to the United States Federal Circuit Court stated, "Copyrights are indeed a species of property, but the extent to which they are protectable against the states raises troubling issues." Citing to the Supreme Court's holding in *Ruckelshaus* that trade secrets are property protected by the Takings Clause, the court said, "ByÂ analogy, copyrights constitute intangible property that, for some purposes at least, receives constitutional protection." *Ruckelshaus v Monsanto*, 467 US 986, 1002-03 (1984).

Published to Public on: https://www.copyhype.com/2012/12/copyright-and-the-takings-clause/

## EXHIBITS TABLE OF CONTENTS

The attached Exhibits submitted with the Complaint are part of this lawsuit case docket and evidence. The attached Exhibits are material facts. A "material fact" is a fact that is important to prove the claims in this truthful and legitimate lawsuit case docket and evidence.

1. **Exhibit A**

   Fifth Amendment Takings

   Copyright Law of the United States and Related Laws Contained in Title 17 of the United States Code – May 2021 (Circular 92)

   Published to Public: https://www.copyright.gov/title17/title17.pdf

2. **Exhibit B**

   RULE 56. Summary Judgment

3. **Exhibit C**

   Plaintiff's Library of Congress Certificate of Registration

4. **Exhibit D**

   Plaintiff's Additional Official Evidence Confirming the Ownership and the Official Registry of the Scientific Discovery of the Intellectual Property

   The Information Security, Artificial Intelligence (AI), and Legacy Information Systems (LIS)

   To Whom It May Concern Letter/Letter of Recommendation

   Quote: "*Dr. Aljindi's doctoral research, which <u>**explored the use of artificial intelligence solutions to prevent information security failures, shed new light on an important and timely topic. His research results stressed the benefits of applying AI solutions to legacy and new information security systems**</u> and were based on high-quality qualitative research methodologies and standards.*"

5. **Exhibit E**

   Plaintiff's Intellectual Property Official Document

   The Information Security, Artificial Intelligence (AI), and Legacy Information Systems (LIS)

Dissertation Manuscript (DM) (192 Pages)

ProQuest 3740130

Published by ProQuest LLC (2015). Copyright of the Dissertation is held by the Author.

All rights reserved.

This work is protected against unauthorized copying under Title 17, United States Code

Microform Edition © ProQuest LLC.

6. **Exhibit F**
   Defendant's 1st Fifth Amendment Takings

   National Science and Technology Council (NSTC)

   Networking and Information Technology Research and Development Subcommittee

   THE NATIONAL ARTIFICIAL INTELLIGENCE RESEARCH AND

   DEVELOPMENT STRATEGIC PLAN

   October 2016

7. **Exhibit G**
   Defendant's 2nd Fifth Amendment Takings

   Office of Director of National Intelligence (ODNI)

   THE AIM INITIATIVE

   A STRATEGY FOR AUGMENTING

   INTELLIGENCE USING MACHINES

   01/01/2019

8. **Exhibit H**
   Defendant's 3rd Fifth Amendment Takings

SUMMARY OF THE 2018 DEPARTMENT OF DEFENSE ARTIFICIAL

INTELLIGENCE STRATEGY

Harnessing AI to Advance Our Security and Prosperity

02/01/2019

9. **Exhibit I**

Defendant's 4th Fifth Amendment Takings

Data Strategy for the U.S. Department of Justice

02/26/2019

10. **Exhibit J**

Defendant's 5th Fifth Amendment Takings

National Institute of Standards and Technology (NIST)

U.S. LEADERSHIP IN AI: A Plan for Federal Engagement in Developing Technical

Standards and Related Tools

Prepared in response to Executive Order 13859

08/10/2019

11. **Exhibit K**

Intentional & Systemic Retaliation

Defendant Small Business Administration's (SBA) Intentional & Systemic Retaliation

12. **Exhibit L**

Damages

The FG **Fifth Amendment Takings** as formally documented in the above referenced formal governmental publications and as published on AI.gov the intellectual scientific property of the Plaintiff. This Scientific knowledge also invoked the Tucker Act. The Plaintiff-Appellant

was the first AI scientist and researcher in the entire field that discovered, studied, and researched the relations between [Information Security, AI and LIS] as formally and scientifically proven and documented in his Ph.D.'s formal documents. According to the facts documented based on the official evidence in this Complaint, the Plaintiff is entitled for his Constitutional Relief for the statuary and actual damages for the Fifth Amendment Takings of his formally registered and copyrighted scientific and intellectual property. *See* Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1016 (1984); Hooe v. United States, **218 U.S. 322, 335-36 (1910).**

Additionally, the FG use of the Plaintiff's taken property for public use as formally proven in this Complaint, damaged the value of the Plaintiff's scientific property as the FG incorporated copyrighted material into official government documents available to the general public publications. Works of the United States government are not copyrightable. *See* **17 U.S.C. § 105 (1994)**. Such incorporation of a copyrighted work into such government documents causes the work to fall into the public domain. *See* Building Officials & Code Adm. v. Code Tech., Inc., **628 F.2d 730,731-36 (1st** Cir. 1980) (suggesting that public's due process right of free access to laws requires that state's incorporation into state administrative regulations of model building code written by private organization caused code to fall into public domain). Furthermore, see Thomas F. Cotter, Do Federal Uses of Intellectual Property Impliate the Fifth Amendment?, 50 Fla. L. Rev. 529 (1998). Available at: https://scholarship.law.ufl.edu/flr/vol50/iss3/3

Therefore, the Plaintiff is entitled for his Constitutional Relief for the statuary and actual damages for the Fifth Amendment Takings of his formally registered and copyrighted scientific and intellectual property.

**SECOND CAUSE OF ACTION**

**INTENTIONAL AND SYSTEMIC RETALIATION**

## APPLICATION FOR ECONOMIC INJURY DISASTER LOAN (EIDL)
## APPLICATION NUMBER: 3319076777

The United States Constitution and the Equal Employment Opportunities (EEO) laws prohibit punishing job applicants or employees for asserting their rights to be free from employment discrimination including harassment. Asserting these EEO rights is called "protected activity," and it can take many forms. It is unlawful to retaliate against applicants or employees for:

- Filing or being a witness in an EEO charge, complaint, investigation, or lawsuit.
- Refusing to follow orders that would result in discrimination.

The United States Constitution prohibit the retaliation and the abuse against the victims for filing formal EEO Complaints and lawsuits in Federal Courts demanding justice and the rule of law. Defendant and the involved Small Business Administration (SBA) in related lawsuit cases 1:21-cv-01295-SSS and 1:21-cv-01578-DAT practiced intentional Retaliation. The SBA practiced and is still practicing intentional and systemic Retaliation against Plaintiff during and after the related lawsuit cases 1:21-cv-01295-SSS and 1:21-cv-01578-DAT and under the federally protected statuses and because of the Plaintiff's federally protected classes and federally protected activities.

The EEO law directed the Plaintiff to mitigate harm and damages. In compliance with the EEO law and the United States Constitution, the Plaintiff was forced to seek a self-employment opportunity and establish a small business so he can survive. The Plaintiff filed his first lawsuit case at the same District Court in December 2018. Since December 2018, Defendant and SBA were retaliating against the undersigned because of his formally protected activities. The SBA was named a Defendant in the United States District Court - Central District of California -

Southern Division case number 8:20-cv-00796-PSG-DFM for Unlawful Employment Discrimination. The SBA's Formal Discrimination Complaint Docket Number 03-19-010. See related cases 1:21-cv-01295-SSS and 1:21-cv-01578-DAT and Supreme Court case 23-5543. The undersigned was trying to establish his self-employment business since December 2018, because Defendant and the SBA refused to stop the intentional and systemic retaliation and process the Application for Economic Injury Disaster Loan (EIDL). As a result of this wrongdoing, the Plaintiff suffered massively from SBA's intentional violations and wrongdoing.

Defendant and the SBA refused to stop the ongoing retaliation. Instead, they increased the illegal escalation against the Plaintiff. On 05/04/2021, the SBA abused the Plaintiff's EIDL application, obstructed, delayed, and denied the SBA Disaster Loan Application Number: 3319076777, before, during, and after the related lawsuit cases 1:21-cv-01295-SSS and 1:21-cv-01578-DAT. See attached Decline Letter in Exhibit K. In the attached Decline Letter, the SBA stated, "If you disagree with our decision, you may request reconsideration."

In the attached Decline Letter, the SBA stated the following:

**Business was Established After the Disaster**

You indicated on your application that your business was established after January 31, 2020, which is the date that COVID-19 was declared a public health emergency. If a business was established after an impending economic injury became apparent, the business is generally not eligible for an economic injury disaster loan. **However, there may be eligibility if you are able to demonstrate that your business was in the process of starting operations prior to January 31, 2020**. SBA will require documentation to support this "organizing stage," Examples of such documentation

include receipts or contractual agreements for inventory or machinery and equipment purchases, advertisements, employment advertisements, etc.

Therefore, the Plaintiff requested a formal Reconsideration Request for SBA Disaster Loan Application Number: 3319076777 on 05/26/2021. See attached Formal Reconsideration Request in Exhibit K.

On 07/06/2021, the SBA responded in writing and denied the formal Reconsideration Request Retaliatory and ignored the formal documents that I have attached to Plaintiff's 05/26/2021 Formal Reconsideration Request confirming that Plaintiff's was in the process to establish his business since December 2018. This retaliatory adverse action is committed in against the United States Constitution aiming to retaliate against the Plaintiff for his legally protected activities and under the federally protected statuses.

The SBA reviewed the submitted documents and considered it sufficient and found the Plaintiff's Small Business eligible and qualified to receive the EIDL's funds. See attached evidence in Exhibit K. However, the SBA abused the Plaintiff's EIDL application, obstructed, delayed, and obstructed the SBA Disaster Loan Application Number: 3319076777, before, during, and after the related lawsuit cases 1:21-cv-01295-SSS and 1:21-cv-01578-DAT. The SBA followed an intentional and systemic retaliation strategy that delayed the Plaintiff's EIDL application till 05/16/2022 and obstructed the application retaliatory till the funds were exhausted.

On 05/16/2022, the SBA deleted the EIDL portal and informed the Plaintiff that his formal Reconsideration Request will not be considered. See the SBA's proven retaliation evidence in Exhibit K.

The SBA practiced intentional and systemic retaliation and violated the United States Constitution because of the Plaintiff's federally protected classes, statuses, and activities. Therefore, the Plaintiff is entitled for his formally proven, evidenced, and documented Constitutional Relief for the severe harm and damages caused to him and to his Small Business because of the SBA's formally proven and evidenced wrongdoing.

**RELIEF**

Plaintiff demands his Constitutional Relief of $65.4 Million for the two causes of action as formally documented and evidenced above in this lawsuit case. Plaintiff demands the Court to GRANT the $65.4 Million Constitutional Relief immediately for the best interest of justice and public interest.

Dated: February 12, 2024,                                   *Submitted by,*

                                                            Dr. AHMAD ALJINDI

                                                            By: *Dr. AHMAD ALJINDI*
                                                            Dr. AHMAD ALJINDI
                                                            PO Box 60753
                                                            Irvine, CA 92602
                                                            Cell: 951-742-9773
                                                            Email: a7mad85@hotmail.com